H. V. RUTHERFORD *vs.* CHICAGO, MILWAUKEE & ST. PAUL RY. CO.

Submitted on briefs April 30, 1894.   Affirmed May 11, 1894.

No. 8902.

No negligence of defendant shown.

    *Held*, in an action to recover damages for the killing of plaintiff's intestate by reason of alleged negligence of defendant corporation when operating one of its trains, that the trial court did not err in its order of dismissal, made when plaintiff rested.

Appeal by plaintiff, H. V. Rutherford, from an order of the District Court of Ramsey County, *Charles E. Otis*, J., made May 1, 1893, denying his motion for a new trial.

On August 26, 1892, Charles Hanzel was at work as a common laborer for the defendant, Chicago Milwaukee and St. Paul Railway Company, cleaning out a trench and fitting it for the foundation of a stone wall on the south side of the double track near Lexington avenue bridge on the line of its road between Minneapolis and St. Paul. The ditch was ten or twelve feet distant from, and parallel to, the south track and on a curve in a deep cut. Hanzel had no occasion to go upon the track in his work. But he went upon the south track while a heavy freight train with two engines was going by to the west upon the north track. A passenger train going east on the south track struck him and caused his death almost instantly. The plaintiff was afterwards appointed administrator of his estate and brought this action under 1878 G. S. ch. 77, § 2, to recover $5,000 for the exclusive benefit of his widow and next of kin. When the plaintiff's evidence had all been given the court dismissed the case saying:

The evidence shows that it was not necessary for Hanzel to go upon the track. In being upon or so near the track as to be injured he unnecessarily placed himself in a place of danger and was guilty of contributory negligence. If he went onto the track in the course of his work it was one of the risks that he assumed in the work which he had undertaken.

Plaintiff excepted, moved for a new trial and appeals from the order refusing it.

*Howard L. Smith*, for appellant.

The railroad company ran its passenger train at a rate of forty miles an hour on a down grade around a sharp curve through a deep cut past a point where a gang of its laborers were at work beside its roadbed. The approaching train could be seen only three seconds before it was upon them. A noisy freight train was passing the same point going in an opposite direction upon an adjoining track. An ordinance forbade the moving of the train faster than four miles an hour. No signal was given till the moment of death. This was negligence on its part. No rule of law or humanity can justify a different conclusion. The presumption is that deceased was exercising ordinary care and caution on his part and that he was not guilty of contributory negligence. *Lillstrom* v. *Northern P. R. Co.*, 53 Minn. 464; *Erickson* v. *St. Paul & D. R. Co.*, 41 Minn. 500; *Crowley* v. *Burlington C. R. & N. R. Co.*, 65 Ia. 658; *Goodfellow* v. *Boston H. & E. R. Co.*, 106 Mass. 461.

If the ordinance was not applicable it was still for the jury to say whether the defendant was negligent in running its trains in the manner shown. *Shaber* v. *St. Paul M. & M. Ry. Co.*, 28 Minn. 103; *Bengtson* v. *Chicago, St. P. M. & O. Ry. Co.*, 47 Minn. 486.

The question of contributory negligence and assumption of risk was for the jury. *Johnson* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 53; *Monks* v. *St. Paul, M. & M. Ry. Co.*, 32 Minn. 208.

*W. H. Norris* and *F. W. Root*, for respondent.

Hanzel's contributory negligence was without the slightest cause, was palpable and gross. There was nothing to bring him out of the ditch and near enough to the track to be struck. His unexplained careless position of unnecessary danger should defeat this action. Hanzel had no business to be where he was struck, no reason to be there, no duty to perform there. *Cunningham* v. *Chicago, M. & St. P. R. Co.*, 17 Fed. Rep. 882; *Marty* v. *Chicago, St. P. M. & O. Ry. Co.*, 38 Minn. 108; *Larson* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 423; *Heffinger* v. *Minneapolis L. & M. Ry. Co.*, 43 Minn. 503; *Bengtson* v. *Chicago, St. P., M. & O. Ry. Co.*, 47 Minn. 486.

COLLINS, J.    This was an action to recover damages for the killing of plaintiff's intestate, Charles Hanzel, alleged to have been caused by defendant's negligence while operating trains.    When plaintiff rested, the case was dismissed, and this appeal is from an order denying his motion for a new trial.

It appeared from the testimony that, for about one month prior to his decease, Hanzel had been in defendant's employ as a section hand, at work in the vicinity of the place where he was killed, on defendant's double-track road between St. Paul and Minneapolis. His work had been that of the ordinary section hand about the roadbed, and he therefore knew, or ought to have known, of the ordinary movements and operations of the trains.    While the men were engaged upon the roadbed near or between the rails, the section foreman watched, and gave warning of the approach of trains, so that the men could step aside if necessary.    Except as to this, the men had to look out for themselves, for it was not the custom to ring the bell or blow the whistle as trains approached them.

For the purpose of building a retaining wall in a ditch on the south side of the roadbed, stone had been hauled over the south track, and for quite a distance thrown off the cars, so that it practically covered the ground from a line about two feet from the south rail to the edge of the ditch eight or ten feet distant.    The wall was to be built ten or twelve feet from the track, which was laid upon a sharp curve with a grade descending towards St. Paul. Masons were building the wall, and, the day before his death, Hanzel was taken from his usual work, and put to cleaning out the bottom of the ditch with a shovel, so that the bottom might be properly prepared for the wall.    Occasionally he had to throw out stone which had fallen into the ditch.    He also had to remove stones which lay in such close proximity to the edge of the ditch that, unless removed, they would fall into it as he worked.    It was shown that, in order to do this, he sometimes had to get out on the edge of the ditch, but there was no testimony whatever tending to show that for this purpose it was necessary for him to go within five or six feet of the rails.

It was surmised by one of plaintiff's witnesses that Hanzel might have thrown stones over on the track, or so close thereto that he

had to go into a place of danger, where he might be struck by a passing train, in order to take them out of the way, but the witness never saw him do anything of the kind. Another of plaintiff's witnesses stated that, when Hanzel threw stones back from the edge of the ditch, they would sometimes roll up close to the rails, and he would have to move them back out of the way of trains, but to do this he was not obliged to go upon the track. In response to the question, "In doing that would he have to go near enough to the track to be hit by a passing train?" this witness said, "If he would be careless enough, and stand right,—that is, bend one way or the other,—then it could be so that he could be struck by the train."

Reference has been made to the prevailing practice, while Hanzel had been at work about the tracks, as to approaching trains,—the foreman watching, and giving notice to the men. Whatever effect this might have had upon the case had the notice been omitted, and Hanzel been killed when at his ordinary work, we need not consider, for it was shown that the foreman was not with the men employed at the wall, and that no one watched or gave warning of the approach of trains. Evidently, men at work upon the wall were not where danger was to be apprehended; but, in any event, the absence of the foreman, and the fact that no one watched or warned the men, was sufficient notice that each was expected to look out for himself.

None of the witnesses saw the accident, and consequently no one could state how Hanzel came to his death. At the time, a freight train with two engines, making a great deal of noise, was on the north track going towards Minneapolis, while a passenger train, running very rapidly, was on the south track going towards St. Paul. The curve at the point was so sharp that, with the freight train on the north track, a person standing where Hanzel's body was found could not see the passenger until it was within 250 feet. Undoubtedly, Hanzel was struck by this train, and he was instantly killed.

After this statement of the controlling facts as they appeared in evidence, it seems quite unnecessary for us to discuss the ruling of the trial court at any great length. It was unquestionably correct.

The train in question was running at a very high rate of speed,— much faster than was permitted under the ordinance; but it was well established by the evidence that this was customary, and that the rate of speed was not unusual for passenger trains; and, as before stated, no warning of their approach was given from the locomotives. All this must have been known to Hanzel, who had worked in the vicinity of this point for defendant at least one month. Knowing that it was defendant's custom to run its passenger trains at the rate of speed at which this was running, he assumed the risk incident thereto, while in defendant's employment. If its modes of running its trains were such as subjected Hanzel to risk of injury, he took upon himself the risk by continuing at work with knowledge of the dangers; so that, if the work in and about the ditch took the deceased into a place of danger, it was incumbent upon him to be mindful of the danger, and exercise sufficient care to avoid injury from passing trains. But there was nothing in the evidence which would have warranted a finding that his work necessarily took him so near the track as to make it dangerous. He might, of course, throw the stones upon the rails; but there was no necessity for it, and, if he did so, it would seem to have been an extremely careless act. If they were small enough to be easily handled by him, a removal of a few inches, only, was demanded in order to get them out of his way, not a removal of five or six feet, or more. If, upon the other hand, they were heavy and unwieldy, it would seem that Hanzel must have put forth great exertion and unnecessary strength in order to get them to a dangerous part of the roadbed. Conceding even that defendant was negligent in running its trains, it is obvious that Hanzel was careless, and contributed to the result by his own inexcusable negligence. That it was not even necessary to put himself in the way of a train in order to remove stones which had been thrown near the rails seems to have been well established by the witness whose evidence we have quoted.

Counsel for plaintiff relies mainly upon the case of *Erickson* v. *St. Paul & Duluth R. Co.*, 41 Minn. 500, (43 N. W. 332.) The difference in the facts can be seen at a glance. That case might have been in point if Hanzel had been killed while at work upon the track, the uniform practice being for the foreman to watch and warn.

But he was not.  He was killed while working elsewhere, away from the foreman, and where he knew that no one gave notice of approaching trains.

It may not be essential, but we take occasion to say that there was no evidence tending to show that defendant's servants operating the train knew that Hanzel was there, or in any place of danger. Evidently, he could not have been seen in time to stop, and thus avert the accident.

Order affirmed.

BUCK, J., because of illness, took no part.

(Opinion published 59 N. W. 302.)